[Civ. No. 11953. First Dist., Div. Two. Dec. 18, 1941.]

Estate of ERIK OLOF LINDBLOM, Deceased. BRITA LINDBLOM et al., Respondents, v. HARRY B. RILEY, as State Controller, etc., Appellant.

James W. Hickey, A. W. Brouillet, and Hugo P. Correll for Appellant.

Worthington, Park & Worthington and Leonard A. Worthington for Respondents.

STURTEVANT, J.—This is an appeal from an order made by the trial court on the 30th day of July, 1940, directing the refund to Hartford Accident & Indemnity Company of the sum of $1000.85 and to Brita Lindblom and Alof Henry Lindblom of the sum of $125, alleged to be inheritance taxes erroneously collected. The controversy arose out of the following facts.

Erik Olof Lindblom died testate on September 23, 1928, being at the time of his death a resident of the county of Alameda, State of California. Probate proceedings were instituted in his estate, and on October 10, 1928, letters testamentary were granted to Central National Bank of Oakland.

The bank or its successor continued to act as executor of the decedent's will until September 4, 1936.

An inheritance tax appraiser was appointed by an order of the probate court, filed on April 15, 1929, to appraise the assets of the estate of the decedent, and to report to the court

the amount of inheritance tax due upon any property passing in the probate proceedings. Thereafter, on October 2, 1929, the appraiser filed his inheritance tax report with the court.

The report found that the clear market value of the property in the decedent's estate amounted to $235,617.83. The report also found that the inheritance tax, based on the highest rate which would be possible on the occurrence of any of the contingencies provided for in the decedent's will, amounted to $2582.35 on the interest of Olof Henry Lindblom, an adult son of the decedent, and a like amount on the interest of respondent Brita Lindblom, and a total tax on all interests of $5194.70. On October 16, 1929, the court made its order fixing the inheritance tax. This order confirmed the appraiser's report and fixed the inheritance tax in exact conformity with the computations made in the report. The order has never been modified and is in full force and effect.

On March 21, 1930, a payment in the sum of $3914.41 was made by the estate to the Alameda County Treasurer on account of the inheritance tax due.

On the same day the respondent Brita Lindblom, and her brother Olof Henry Lindblom, filed their written election not to pay the balance of the inheritance tax until the contingencies on which the highest tax was based actually occurred. Also on March 21, 1930, said respondent and her brother, as principals, and Hartford Accident & Indemnity Company, as surety, filed a bond securing the payment of the balance of the tax.

On September 7, 1935, the executor of the decedent's will and the state controller entered into a written stipulation to compromise the balance of the contingent inheritance taxes remaining unpaid, which was approved by order of the court on December 13, 1935. On the latter date respondent, Hartford Accident & Indemnity Company, paid $1120.85, the amount of the compromise balance of the tax specified in the compromise stipulation.

No further questions arose with respect to the inheritance taxes in said estate until June 27, 1940, when the respondents filed their petition for refund of $1120.85, the portion of the inheritance taxes which had been paid pursuant to said compromise.

The appellant has brought up a bill of exceptions which purports to be a full, true, and correct statement of the evidence introduced and the proceedings had in the trial court. The bill contains copies of certain of the papers filed in the probate proceedings and a copy of the petition filed by these respondents. It does not contain any other evidence.

The appellant contends that the petition of the respondents did not state facts sufficient to support the order appealed from and that the evidence was insufficient to support said order. The respondents attempt to controvert the first contention but do not reply to the second. Among other things they state: "The contingency upon which the high tax was based has never occurred, the heirs have never come into enjoyment of the estate nor any portion thereof, *and there are insufficient assets even to pay the costs of administration.* According to the high contingency tax each heir was to receive $98,308.91, and according to the low contingency tax $75,367.95. Neither of them has received anything from said estate *and according to the final accounting the costs of administration undoubtedly never will be paid.*" (Italics ours.) An examination of the record discloses no evidence to support the statements which we have italicized. The entire record shows that the respondents seek to attack the compromise made on September 7, 1935. There is not a word in the record showing that said compromise was not in accordance with the facts as they appeared on said date. That the estate of the decedent is embarrassed financially from some cause is apparent. Whether that condition arose prior to September 7, 1935, whether it existed at that time, or whether it has occurred since, the record is silent. Whether in the future the holdings by the estate of numerous corporate securities may be sufficient to pay off all claims and pay off the bequests, the record is entirely silent. In short the record does not disclose that the compromise was erroneous or that any payment of taxes has been erroneously made. It merely shows that the legatees have changed their minds about the advisability of paying the tax based on the highest contingency until a decree of distribution has been made.

The order appealed from is reversed.

Nourse, P. J., and Spence, J., concurred.